UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CONRADO VIRGEN-MENDOZA,<br><br>Defendant. | No. 1:19-cr-00015-ADA-BAM<br><br>ORDER GRANTING DEFENDANT'S MOTION TO REVOKE THE MAGISTRATE JUDGE'S ORDER DENYING MODIFICATION OF CONDITIONS OF RELEASE<br><br>(ECF No. 704) |

**I.    Factual and Procedural Background**

On January 2, 2019, the government filed a complaint against Defendant Conrado Virgen-Mendoza ("Defendant") with one count of conspiracy and aiding and abetting concealment, harboring, shielding from detection an alien in violation of the law and one count of conspiracy to effect flight to avoid persecution. (ECF No. 1.) On January 18, 2019, Defendant made his initial appearance on the complaint. (ECF No. 25.) At his detention hearing on January 24, 2019, the Magistrate Judge determined that Defendant presented a risk of flight but was not a danger to the community. (ECF Nos. 54, 60.) On the same day, the government filed an indictment charging Defendant with one count of conspiracy to harbor an alien in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (v). (ECF No. 55.)

On January 29, 2019, Defendant was arraigned on the indictment and entered a plea of not guilty. (ECF No. 77.) On February 21, 2019, the government filed a superseding indictment,

1    charging Defendant in Count Three with conspiracy to harbor an alien in violation of 8 U.S.C. §
2    1324(a)(1)(A)(iii) and (v), in Count Four with misuse of a social security number in violation of 42
3    U.S.C. § 408(a)(7)(B), and in Count Five with possession of a false immigration document in
4    violation of 18 U.S.C. § 1546(a).  (ECF No. 132.)  On March 8, 2019, Defendant filed a motion to
5    sever Counts Four and Five, which the Court granted on April 8, 2019.  (ECF Nos. 171, 264.)

6    　　　　On March 21, 2019, the government filed another superseding indictment, charging
7    Defendant in Count Three with conspiracy to aid and abet flight to avoid persecution in violation
8    of 18 U.S.C. §§ 371, 1073, and 2, in Count Four with conspiracy to harbor an alien in violation of
9    8 U.S.C. §§ 1324(a)(1)(A)(iii) and (v), in Count Five with misuse of a social security number in
10   violation of 42 U.S.C. § 408(a)(7)(B), and in Count Six with possession of a false immigration
11   document in violation of 18 U.S.C. § 1546(a).  (ECF No. 230.)  On March 25, 2019, Defendant
12   entered a not guilty plea at the arraignment for the second superseding indictment.  (ECF No. 241.)

13   　　　　On April 9, 2019, the Court ordered Defendant's release.  (ECF No. 272.)  Following the
14   posting of collateral and the appearance and compliance bond, Defendant was released on April 10,
15   2019.  (ECF Nos. 274-276.)

16   　　　　On June 13, 2019, the government filed a third superseding indictment, charging Defendant
17   in Count Three with conspiracy to aid and abet flight to avoid persecution in violation of 18 U.S.C.
18   §§ 371, 1073, and 2, in Count Four with conspiracy to harbor an alien in violation of 8 U.S.C. §§
19   1324(a)(1)(A)(iii) and (v), and in Count Five with harboring an alien and aiding and abetting in
20   violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (v) and 18 U.S.C. § 2.  (ECF No. 324.)  On June 27,
21   2019, the Court arraigned Defendant on the third superseding indictment, and Defendant entered
22   not guilty pleas to all counts.  (ECF No. 340.)  The government ultimately proceeded to trial on the
23   third superseding indictment.  On August 6, 2019, the Court modified Defendant's conditions of
24   release, converting the location monitoring condition from home detention to a curfew of 8:00 p.m.
25   to 8:00 a.m.  (ECF No. 391.)

26   　　　　On September 9, 2019, the jury trial commenced and continued through September 30,
27   2019.  (ECF Nos. 495, 544.)  On September 30, 2019, the jury returned a verdict finding Defendant
28   guilty as to Count Three and not guilty as to Counts Four and Five.  (ECF No. 544.)  Defendant

1  subsequently entered a plea agreement with the government as to the severed counts from the
2  second superseding indictment.  (ECF No. 578.)  On January 21, 2020, Defendant plead guilty to
3  Count Six of the second superseding indictment.  (ECF No. 606.)

4        On March 29, 2021, the Court held Defendant's sentencing hearing as to Count Six of the
5  second superseding indictment and Count Three of the third superseding indictment.  (ECF No.
6  671.)  At the hearing, the Court imposed a sentence of 21 months each to Counts 3 and 6, to be
7  served concurrently.  (*Id.*)  Defendant moved for bail pending the outcome of his Ninth Circuit
8  appeal of Count Three, which the Court granted.  (*Id.*)  At the end of the hearing, Defendant
9  requested that the Court reconsider the imposition of the location monitoring condition.  (ECF No.
10 683 at 38.)  The Court denied the issue without prejudice because the Court did not have the
11 opportunity to confer with the Pretrial Services Office and obtain their position beforehand.  (*Id.*)

12       On January 12, 2023, Defendant raised the question of whether the location monitoring
13 condition is appropriate in a motion for bail review pursuant to 18 U.S.C. § 3142(a)(2).  (ECF No.
14 698.)  The government filed its opposition on January 17, 2023.  (ECF No. 700.)  On January 19,
15 2023, the Magistrate Judge denied Defendant's motion because the Court found that (1) continued
16 compliance with conditions of release did not constitute a "material change" to support a motion
17 for bail review and that (2) the Court was not inclined to overturn a District Judge's order.  (ECF
18 Nos. 701, 703 at 14.)

19       On February 2, 2023, Defendant filed the instant motion to revoke the Magistrate Judge's
20 order.  (ECF No. 704.)  The government filed its opposition on February 9, 2023.  (ECF No. 707.)
21 On February 14, 2023, Defendant filed his reply.  (ECF No. 709.)

22 **II.    Discussion**

23 **A.  Standard of Review**

24 A defendant may file a motion to revoke a magistrate judge order of detention or to amend
25 the conditions of release issued by a magistrate judge with the court of original jurisdiction (in this
26 case, the District Court) and that motion "shall be determined promptly."  18 U.S.C. § 3145(b) and
27 18 U.S.C. § 3145(a)(2).  The Court "may at any time amend the order to impose additional or
28 different conditions of release."  18 U.S.C. § 1342(c)(3).  Review of such order shall be *de novo*.

3

*United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). A district court's *de novo* review in this context means:

> [i]t should review the evidence before the magistrate and make its own independent determination of whether the magistrate's findings are correct, with no deference . . . [t]he point is that the district court is to make its own "de novo" determination of facts, whether different from or an adoption of the findings of the magistrate . . . the ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion.

*Id.* at 1193.

**B. The Court will grant Defendant's motion to remove location monitoring because it is more restrictive than necessary to ensure public safety and Defendant's return to court.**

When a court determines that pretrial detention is not necessary to reasonably assure public safety or the defendant's appearance in court, it must release that defendant from custody. *Cf.* 18 U.S.C. § 3142(e)(1). A defendant's release is not, however, unqualified – the court may impose conditions of release that are the least restrictive necessary to ensure public safety and the defendant's appearance. *Id.* § 3142(c)(1)(B). When determining the appropriateness of release conditions, courts consider the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that the defendant's release would pose. *Id.* § 3142(g).

The Court has already determined that pretrial detention is not necessary in Defendant's case. (*See* ECF No. 272.) The remaining question is what conditions are the least restrictive to ensure public safety and Defendant's return to court. In his motion, Defendant presents new information that was not known to the Court at the time of his initial release: Immigration and Customs Enforcement ("ICE") has been concurrently monitoring Defendant for the last four years through an ankle monitor. (ECF No. 704 at 6.) In other words, Defendant has been wearing two ankle monitors for nearly four years: one on his left leg for the Pretrial Services Office and one on his right leg for ICE. (*Id.*) Defendant asserts that a second location monitor has been over

1  restrictive since the inception of his release. (*Id.* at 10.) Defendant notes that he has complied with
2  the conditions of his pretrial release for nearly four years, which warrants the change of such
3  conditions. (*Id.*) Additional factors to support the change in conditions include the length of time
4  as a resident and member of the Chowchilla and Central Valley communities, his spouse as his
5  third-party custodian, and his three young U.S. citizen children. (*Id.* at 11.) Defendant further
6  argues that the Court is not precluded to reevaluate his conditions of release even if the Court does
7  not find that the new information is sufficiently material to warrant a motion for bail review. (*Id.*)
8  Overall, Defendant urges the Court to remove his location monitoring requirement.

9  In opposition, the government argues that Defendant's motion to eliminate Pretrial Services
10 Office's location monitoring should be denied because he fails to show with clear and convincing
11 evidence that he is "not likely" to flee as required by § 3143(b)(1)(A). (ECF No. 707 at 9-10.) The
12 government argues that Defendant's electronic monitoring device under Pretrial Services Office
13 may counsel against any notion to flee. (*Id.* at 9.) The government asserts that Defendant does not
14 establish that ICE location monitoring is sufficient to present that he is not a flight risk, noting that
15 the BI Incorporated (ICE Contractor) advertisement attached to Defendant's motion does not
16 constitute clear and convincing evidence. (*Id.*) The government further contends that BI
17 Incorporated location monitoring is more passive than that of the Pretrial Services Office because
18 ICE monitoring is in place solely to ensure Defendant's appearance at immigration proceedings.
19 (*Id.* at 10.) The government also notes that BI Incorporated is expected to de-escalate its monitoring
20 through replacing ankle monitors with a new real-time communication platform. (*Id.*)

21 The government also highlights that Defendant is a Mexican citizen, and that he had
22 previously been removed from the U.S. and unlawfully reentered the U.S. (*Id.* at 11.) Defendant
23 is currently unauthorized to work and remains unemployed. (*Id.*) Defendant has family in Mexico,
24 including his parents and his brother and co-defendant, Adrian Virgen-Mendoza. (*Id.*) Defendant
25 will remain subject to deportation, regardless of the outcome of his criminal appeal. (*Id.*) Overall,
26 the government urges the Court to find that the Pretrial Services Office's location monitoring device
27 is a small imposition on Defendant to mitigate flight risk. (*Id.* at 12.)
28 ///

The Court finds that the government's arguments are unavailing and that a change in Defendant's release conditions would still reasonably assure his appearances at future court proceedings. The government largely argues that compliance with release conditions is not enough to warrant modification of release conditions. In the Court's opinion, one of the government's primary citations, *United States v. Williams*, D.C. No. 2:12-CR-463 JCM (VCF), 2015 WL 9595403 (D. Nev. Dec. 31, 2015), does not warrant denial of modifications of Defendant's release conditions. In *Williams*, the court denied the defendant's pretrial motion to reconsider the denial of a request to remove electronic monitoring condition because the primary purpose of the condition was to ensure attendance at court and mitigate flight risk. *Id.* at *3 n.3. The defendant lacked ties to the community, was unlawfully residing in the U.S., has already attempted to leave the country, and continued to engage in allegedly fraudulent conduct. *Id.* at *3. The court found that the defendant exhibited a general disrespect for the law because he was then fraudulently occupying a residence while awaiting trial. *Id.* The defendant also did not suggest a less restrictive condition to incentivize attending court proceedings. *Id.* As a result, the court found that the defendant posed a flight risk by clear and convincing evidence. *Id.*

Unlike *Williams*, the Court finds that despite Defendant's status as a noncitizen, the location monitoring is no longer among the least restrictive conditions of his release. No evidence suggests that Defendant continues to engage in criminal conduct or that removal of the location monitoring condition increases his likelihood to engage in criminal conduct like the defendant in *Williams*. The Court acknowledges that Defendant may be removed from the U.S., but the Court recognizes that Defendant has resided in California for the past 22 years and has not engaged in discussions with ICE to deport him voluntarily. (*See* ECF No. 709 at 2.) Defendant is not currently under removal proceedings and has a visa application pending. (*See* ECF No. 701-1 at 15-16.) Where the defendant in *Williams* failed to suggest less restrictive conditions, Defendant presents that his ICE location monitoring, in addition to the other conditions of release, is a less restrictive condition. Therefore, the Court finds that Defendant's circumstances are distinguishable from those in *Williams*.

///

Even though there is evidence that ICE monitoring may not meet the needs of location monitoring under the Pretrial Services Office,[1] the Court finds that Pretrial Services Office's recommendation for a requirement change discounts any argument that Defendant's conditions of release without location monitoring would result in a greater likelihood that Defendant will not attend his court proceedings.  Defendant also explains that ICE location monitoring limits Defendant to a small radius surrounding his residence in Chowchilla, CA, which is more restrictive than location monitoring under the Pretrial Services Office.  (ECF No. 709 at 4.)  Defendant provides an anecdote of a time when he was travelling to San Francisco for an immigration hearing, without previously entering the pre-authorized travel in BI Incorporated's system, which triggered an alert.  (*Id.* at 4 n.5.)  An ICE officer immediately contacted Defendant through the speaker on his ankle-worn GPS monitor and confirmed that Defendant was travelling for court, subsequently clearing the alert.  (*Id.*)  The Court finds that ICE location monitoring diminishes concern of Defendant's risk of flight.

Even if ICE was not monitoring Defendant, Defendant's continuous compliance with the release conditions for the past four years supports a change in conditions.  The Court considers Defendant's reliance on *United States v. Hutchins*, 298 F.Supp.3d 1205 (E.D. Wis. 2017), in his original motion for bail review.  (ECF No. 698 at 3.)  There, the court held that "[w]hen defendants establish that they will abide by their obligation to appear in court, logic dictates that the justification for imposing the existing release condition lessens."  *Hutchins*, 298 F.Supp.3d at 1208.  In other words, compliance with conditions of release over a long period of time supports that such

---

[1] The government argues that ICE monitoring alone, along with the other conditions, is not the least restrictive means of conditions of release, relying on the U.S. Government Accountability Office's ("GAO") review of ICE's Alternatives to Detention program.  (*See* ECF No. 707 at 10.)  The Alternatives to Detention program permits ICE to release individuals awaiting decisions in their immigration court cases.  The GAO's review of ICE's program does not support that ICE's monitoring itself of released individuals is insufficient.  Rather, the GAO notes that ICE does not track whether the majority of unenrolled participants continue to comply with the requirements of their release, or for example, become fugitives.  In other words, ICE appears to have an oversight issue, where the agency presents incomplete pictures of its performance and lacks the infrastructure to assess whether it needs to make improvements.  Therefore, the Court finds that this evidence does not support that ICE monitoring ineffectively tracks Defendant's location. The Court further finds that such monitoring does not need to be considered as a replacement for the location monitoring under the Pretrial Services Office or an alternative, less restrictive condition.

defendant is less of a flight risk, requiring less restrictive conditions. For example, in this case, on August 6, 2019, both parties stipulated to lessen the restrictions imposed on Defendant's conditions of release. (*See* ECF No. 391.) In the stipulation and order, the Court changed Defendant's condition from home detention to curfew because he had been compliant with his release conditions for nearly four months, communicates with Pretrial Services, and provides appropriate documentation as directed. (*Id.* at 2.) The Court deemed the modification appropriate because it reflected Defendant's progress on pretrial release. (*Id.*) Nothing in the record suggests that Defendant may not be afforded another change in his conditions of release.

Defendant also relies on *United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015), to undermine the government's argument that Defendant is a flight risk due to his immigration status. (ECF No. 709 at 3.) There, the court held that the district court erred in relying on the existence of an ICE detainer and the probability of the defendant's immigration detention and removal from the U.S. to find that no condition or combination of conditions will reasonably assure the defendant's appearance. *Santos-Flores*, 794 F.3d at 1092. Nonetheless, the court held that the defendant's detention is supported by several factors: (1) the defendant's violation of the terms of his supervised release, (2) his multiple unlawful entries into the U.S., (3) his prior failure to appear when required in state court, (4) his use and possession of fraudulent identity documents, and (5) the severity of the potential punishment and the weight of the evidence against him. *Id.*

Similar to *Santos-Flores*, the Court declines to find that no conditions or combination of conditions of release may be the least restrictive based solely on Defendant's unlawful status and his possibility of removal from the U.S. The Court still recognizes that Defendant's unlawful status and possibility of removal are factors to consider determining his conditions of release. The Court further notes that Defendant's circumstances are distinguishable from those of the defendant in *Santos-Flores*. Unlike *Santos-Flores*, Defendant has continuously complied with his conditions of release for nearly four years and has not failed to appear in court. Therefore, the Court is not persuaded by the government's argument to deny Defendant's change in conditions of release based solely on his status as a noncitizen.

///

The government notably does not account for other important factors that support the determination that Defendant is not a flight risk. In addition to location monitoring, the Court considers the other conditions that will reasonably assure Defendant's attendance at court proceedings: Defendant is currently monitored by a curfew with a 12-hour window, has a court appointed third-party custodian, and is liable for a $20,000 bond. *See* 18 U.S.C. § 3142(c)(B). In Chowchilla, Defendant also currently resides with his U.S. citizen wife and three young U.S. citizen children at the ages of 4, 8, and 10 years old. (ECF No. 709 at 2.) Defendant explains that he "would not flee and leave behind the family and the community that represent the most important aspects of his life, especially not to avoid the service of a 21-month sentence." (*Id.* at 2-3.) Defendant further explains that he would not "financially endanger those who signed bonds and posted their property for him four years ago by fleeing from the final stage of his case now." (*Id.* at 3.) Overall, the Court finds that Defendant's history and characteristics support the removal of the location monitoring requirement.

Finally, the government does not dispute that the Pretrial Services Office has the best opportunity to observe and evaluate Defendant's behavior and conduct. In short, they are in the best position to gauge whether the conditions the Court has imposed are actually the least restrictive. They also function as an independent third party, assessing Defendant from a non-adversarial perspective. While they cooperate with the United States Attorney, *see, e.g.*, 18 U.S.C. § 3154(8), (10), they work under the auspices of the Administrative Office of the United States Courts. *See id.* § 3152(a). Additionally, it is Congress, not any entity in the courtroom, that delineates Pretrial Services' duties, which involves closely monitoring the conduct of individuals on pretrial release. *See generally id.* § 3154. Their purpose is to provide information to the Court to make informed decisions. *See* Nat'l Ass'n of Pretrial Servs. Agencies, Standards on Pretrial Release 58 (2020). Taking this information into account is critical to the Court's ability to craft pretrial release conditions that comply with the Bail Reform Act and the Constitution. The Pretrial Services Office's continued monitoring of Defendant will ensure that any non-compliance with release conditions will be brought to the Court's attention and dealt with appropriately. The Court recognizes the Pretrial Services Office's expertise in what is required for successful pretrial

supervision and the Pretrial Services Office supports the elimination of the location monitoring condition. In this case, the support of Pretrial Services, along with the undisputed fact that Defendant has been in full compliance with his conditions, demonstrates to the Court that Defendant's location monitoring is no longer a necessary condition of his release.

Based on the history of Defendant's compliance with the conditions of release, the Court orders the removal of the location monitoring requirement.

### III.    Conclusion

Accordingly,

1. Defendant's motion, construed as a request to exercise the District Court's discretion to re-open his bail review hearing, is granted;
2. The Court finds that the combination of prolonged compliance with the conditions of his release and Pretrial Services' recommendation to alter those conditions constitutes a change in circumstances permitting this Court to reconsider Defendant's conditions of release; and
3. The Court finds that location monitoring is no longer among the least restrictive conditions to ensure Defendant's return to court and the safety of the public, and the Court removes it as a condition of Defendant's release.

IT IS SO ORDERED.

Dated:    February 16, 2023                              _____
                                                          UNITED STATES DISTRICT JUDGE